In the Matter of the Application of NEW YORK TELEPHONE COMPANY, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting Public Service Commission of the State of New York, and PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Defendants.*

Third Department, May 13, 1936.

* Annulling 47 State Dept. Rep. 1051.

Charles T. Russell [*Edward L. Blackman* of counsel], for the petitioner.

Charles G. Blakeslee, Counsel to Public Service Commission [*John T. Ryan* with him on the brief], for the defendants.

HILL, P. J. The Public Service Commission, by its order of May 1, 1930, fixed a schedule of local rates for petitioner. Later in the same year toll rates were fixed by a separate order. In the opinion which accompanied the May first order it was determined that an income of $37,734,154 from net telephone earnings was required in 1930 to permit petitioner to pay its operating expenses and receive an adequate return upon the fair value of its property used and useful in the public service. Among the many items that went to make up the total, the Commission permitted petitioner to charge twenty-five cents a month for a hand telephone above the rate charged for a desk phone. The subscriber chose the type of phone he desired, but was required

to pay the additional twenty-five cents a month for the hand set. From the evidence it appears that the income received by petitioner each year under the 1930 schedules has been several millions below the $37,734,154 which the Commission had found was necessary to pay expenses and a reasonable return. However, the 1930 schedules remained unchanged until 1933, when the proceeding under review was begun by the Commission acting first upon the complaint of a subscriber who used a hand set. At the time of the hearing, about 800,000 hand telephones were in use. By the order under review, the charge of twenty-five cents a month was reduced to fifteen cents a' month, thereby lessening petitioner's annual net earnings by about $1,000,000. The Commission justified the reduction by a finding that there was little, if any, difference in expense to petitioner between hand and desk phones. Upon the hearing, petitioner attempted to offer proof along two lines: (1) That the differential between hand and desk phones was justified because of the great development expense of the former and because of the greater cost of maintenance; (2) that the total net earnings under the rates fixed in 1930 did not give an adequate return and thus that further reduction could not be made legally. Proof was allowed on that branch of the case which I have designated (1), but all evidence as to general inadequacy of return and confiscation was excluded over the objection of the petitioner. The Commission determined that the differential between hand and desk sets did not affect the general rate structure, for the reason that the telephone instrument is not an integral part of the telephone system. The Commission's brief, in discussing the decision in *United Railways & Electric Co. of Baltimore* v. *West* (280 U. S. 234), says: " Another distinction between the *West* case and the present one is that the ' Halethorpe Line ' was there found to be an ' integral part of the railway system ' whereas here the hand set telephone is not an integral part of the telephone company's system." This argument is not impressive. A hand or desk telephone set, disconnected from the lines and equipment of the entire system, would be of little use. Through its mouthpiece, we project the spoken word to any one of the millions of subscribers, using all the varied and wonderful mechanisms of the entire system, each functioning with it to give us the service for which we pay. Without the visible telephone set, all the wires, cables, coils, switchboards and other devices would be useless. It is much more an integral part of the system than the " Halethorpe Line " in the *West* case, which was a branch of the Baltimore trolley system that ran to, and accommodated the residents of, Halethorpe, " an unincorporated community lying outside the limits of Balti-

more City;" likewise it is much more an integral part of the telephone system than the "South Line" in *Groesbeck* v. *Duluth, S. S. & A. R. Co.* (250 U. S. 607, 612). There the South line, built by a competitor, was held to be an integral part of the railway system even though it had been purchased to avoid ruinous competition and paralleled the main line of the company, which could accommodate all traffic between the common terminii.

The total net income received by petitioner must be considered in its relation to the total operating expense and return on the entire property in determining whether a rate is confiscatory. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Public Service Commission*, 215 N. Y. 241, 248; *United Railways & Electric Co. of Baltimore* v. *West, supra; Groesbeck* v. *Duluth, S. S. & A. R. Co., supra; People ex rel. New York & Queens Gas Co.* v. *McCall*, 245 U. S. 345; *Puget Sound Traction, Light & Power Co.* v. *Reynolds*, 244 id. 574.)

In the schedule of rates fixed by the Commission are many items and differentials between classes of service of the same general character, like individual, two-party, four-party, business, professional, residence and rural lines. Business rates include the items of charge permitted for private branch exchanges as compared with individual and party lines; there is a differential for night service, if there is a private exchange, also for inter-connecting systems through the plant or store. The listing of the several items of charge under the 1930 order occupies many pages of the record. If the Commission may reduce one of these items involving a million dollars of income without permitting petitioner to give proof to show that its entire net operating income is inadequate, then by the same token each of the many items may be reduced separately, still with no evidence in opposition from the petitioner.

Doubtless small inequalities or obvious errors in rate schedules could be corrected without taking proof as to the adequacy of the general rate schedule, but it is difficult to regard $1,000,000 as a trifling matter. Even if we view it in its relation to the other great sums with which this record is studded, the *de minimis* doctrine is hardly applicable, and there is no claim or theory by the Commission that the rates in 1930 were not established after due consideration, and in fact, almost under the mandate of the United States court. By excluding the evidence offered by petitioner, the Commission violated a rule of law affecting petitioner's rights and to its prejudice. (Civ. Prac. Act, § 1304, subd. 3.)

The company by its answer asserts that it is not receiving a legal return on its property, used and useful in the public service and accordingly that its net income should not be reduced. An

examination of the books of the company and the findings of the Commission in 1930 without considering all of the evidence offered on the hearing possibly would make it evident whether the total net income would justify a reduction of $960,000. Should such cursory examination satisfy the Commission that the reduction would not amount to confiscation, it would be proper to change the rate as altered here without an examination of all the evidence. The evidence offered by the company consisted largely of schedules and tables containing lists of the items of the company's property, together with the claimed value of each item. Substantially all of the time consumed in rate hearings is devoted to cross- and redirect-examination of the company's employees and officials. This examination concerns all the minutiæ contained in the schedules and tables. This lengthy examination would be unnecessary if from the cursory examination I have mentioned the reasonableness of the Commission's order would be obvious. The courts have decided that upon the issue of confiscation the burden is upon the utility. With this burden so placed the Commission should receive all legal evidence offered. If an examination of the major items suffices, consideration of the minutiæ is unnecessary. When a rate of large import has been legally fixed, in connection with all the items of income, it may not be altered as here so as to reduce the net income by approximately three per cent, without regard to the complete net earnings and the legal return upon all of the company's property.

The determination should be annulled, with fifty dollars costs, and the matter remitted.

McNamee, J., concurs; Rhodes, J., concurs in the opinion of Hill, P. J., and also with a separate opinion; Bliss and Heffernan, JJ., dissent, and vote to confirm, with a memorandum.

Rhodes, J. (concurring). In 1930 the Commission by two separate orders promulgated an entire schedule of rates effective throughout the State for telephone service of petitioner. At the same time, by its opinion, the Commission indicated that the rates would produce a fair return based upon the assumption that business recovery from the depression " is certain and which cannot reasonably be expected to be long delayed." The petitioner contended that the depression would be severe and long and that the rates would produce insufficient income to afford a reasonable return.

In 1932 the Commission, upon a complaint which it sponsored, commenced an investigation as to the rate of twenty-five cents a month for hand telephones. The petitioner, by its answer to

that complaint, alleged that the rates and charges then existing which had been imposed by the Commission, had never yielded a fair return; that any reduction in the rate for hand telephones would result in making more inadequate the rates and charges already insufficient; that the Commission had fixed a net return of seven per cent as reasonable; that the net earnings have fallen below said return of seven per cent by many millions of dollars, and that said rates and charges are in the aggregate substantially less than lawful rates.

At the beginning of the hearing, petitioner's counsel again asserted such contentions, and further asserted that the fair rate of return should be more than the seven per cent rate which the Commission had found to be reasonable; that while petitioner was willing to abide by the rates then in existence without complaint, although they failed to provide fair, adequate and reasonable return, if a further reduction were ordered the company would not consent thereto, but would stand upon and insist upon its rights. Petitioner's counsel stated that petitioner was prepared to introduce proof of these defenses and offered such proof which was rejected by the Commission as immaterial.

It is firmly established by the decisions of our highest court that it is the right of a public utility to a fair and reasonable return upon its property actually used in the public service, and that when such utility is prevented by public authority from earning such reasonable return, such order or limitation results in confiscation, and that the utility is protected from such confiscation by constitutional mandate.

The defense of confiscation is here raised, and the petitioner under the issues framed, was entitled to introduce proof to establish such contention, and any such proffered proof was not immaterial.

The general proposition is fully discussed in *Matter of New York Edison Co.* v. *Maltbie* (244 App. Div. 436) and cases therein cited, and in *Matter of Rockland Light & Power Co.* v. *Maltbie* (241 id. 122).

For these reasons the order under review should be annulled and matter remitted to the Commission for further proceedings in accordance herewith.

BLISS and HEFFERNAN, JJ. (dissenting). We are convinced that the Public Service Commission is justified in determining the simple question presented by this record without valuing all the land and buildings owned by the company throughout the entire State and all its property which it uses in furnishing telephone service. To hold as petitioner asks us to do would mean that the

Commission could never determine the reasonableness of any charge whatever for the use of telephone equipment without appraising every bit of property used by the company for telephone service. From a practical standpoint the Commission should not be compelled to conduct a general rate investigation upon this complaint which involved one class of service only and which was not furnished to the subscribers as a whole. So long as the rate upon this particular item of service is reasonable and not confiscatory it cannot adversely affect the general rate structure and be the cause of rendering such general rate structure confiscatory. The inadequacy in the general rate structure lies in another direction.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the Public Service Commission.